1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRUKER SPATIAL BIOLOGY, INC., BRUKER NANO, INC., and BRUKER CORP.,

Plaintiffs,

v.

AMAZON WEB SERVICES, INC.,

Defendant.

CASE NO.  2:25-mc-00023-TL

**DECLARATION OF SAVANNAH CARNES IN SUPPORT OF BRUKER SPATIAL BIOLOGY, INC., BRUKER NANO, INC., AND BRUKER CORP.'S MOTION TO ENFORCE FOREIGN SUBPOENA ISSUED TO AMAZON WEB ERVICES, INC.**

NOTE ON MOTION CALENDAR:
May 16, 2025

ORAL ARGUMENT REQUESTED

I, Savannah Carnes, hereby declare as follows:

1.      I am an attorney with the law firm Reichman Jorgensen Lehman & Feldberg LLP, counsel for Plaintiffs Bruker Spatial Biology, Inc., Bruker Nano, Inc., and Bruker Corp. ("Bruker") in a pending patent infringement action brought by 10X Genomics, Inc. and the President and Fellows of Harvard College in the United States District Court for the District of Delaware captioned *10X Genomics, Inc., et al. v. Bruker Spatial Biology, Inc., et al.*, C.A. No. 22-261-MFK (the "Delaware Action").  I am a member of the state bar of California in good standing.

2.      I submit this declaration in support of Bruker's motion for an order compelling Amazon Web Services, Inc. ("Amazon") to comply with a third-party subpoena seeking Amazon's deposition testimony in connection with the Delaware Action ("Deposition Subpoena").

### Bruker's Deposition Subpoena, Amazon's Objections, and Counsel's Meet-and-Confer Efforts

3.      The Deposition Subpoena was issued on March 12, 2025; served on March 13, 2025; and noticed to 10X and Harvard in the Delaware Action on March 14, 2025.  A true and correct copy of Bruker's Notice of Subpoena to 10X and Harvard together with attached Deposition Subpoena is attached hereto as **Exhibit 1**.

4.      Amazon did not move to quash the Deposition Subpoena.

5.      On March 25, 2025, Amazon served written objections to the Deposition Subpoena, a true and correct copy of which is attached as **Exhibit 2**.

6.      Bruker's counsel met-and-conferred with Amazon's counsel multiple times over email and phone.  Bruker's counsel proposed several accommodations to reduce any burden, including time limits, remote appearance, or a written deposition.  The primary objection expressed by Amazon's counsel was that it would be overly burdensome to prepare and produce a corporate representative fully knowledgeable about all of Amazon's global cloud computing infrastructure,

Bruker's business operations, and the claims and defenses in the Delaware Action.  A true and correct copy of the complete meet-and-confer email chain among Bruker's and Amazon's counsel is attached hereto as **Exhibit 3**.  Following the last email on this chain, Amazon's counsel and I met and conferred once more on the phone, on April 24, 2025.  To date, Amazon has not agreed to prepare and produce a corporate representative to sit for a deposition.

7.      To date, Amazon has not moved for a protective order.

### The Importance of the Testimony Sought to the Delaware Action

8.      The plaintiffs in the Delaware Action, 10x Genomics, Inc. ("10x") and President and Fellows of Harvard College ("Harvard"), allege that Bruker infringes method claims directed to identifying RNA analytes.  A true and correct copy of 10x and Harvard's Second Amended Complaint is attached hereto as **Exhibit 4**; a true and correct copy of Bruker's Answer to the Second Amended Complaint and Counterclaims is attached hereto as **Exhibit 5**; and a true and correct copy of 10x and Harvard's Answer to Counterclaims is attached hereto as **Exhibit 6**.

9.      A central issue in the Delaware Action is whether the "identifying" step is performed within the United States (as required under 35 U.S.C. § 271(a)) or outside the United States by Bruker's cloud-based AtoMx software platform.  If even a single step of a method claim is performed outside the country, there is no infringement.  *See NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) (abrogated on other grounds) ("We therefore hold that a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country.").  Specifically, Bruker contends that the "identifying" step is performed on Amazon's servers that are in Amazon's "Canada-Central-1" region. *See id.* (no infringement where step of the claimed method is performed in Canada).  10x and Harvard dispute that the "identifying" step takes place exclusively in Canada, and have suggested that servers in

Amazon's "Canada-Central-1" region may actually operate in the United States.  Confirmation that Bruker's software service practices "identification" outside the U.S. is potentially case dispositive of 10x and Harvard's method patent infringement claims in favor of Bruker; the location of those servers is therefore central to resolving the infringement question.

10.     The District Court for the Delaware Action reopened discovery related to this extraterritoriality issue.  22-cv-261 D.I. 515.  Bruker's efforts to subpoena Amazon ensued.

**The Deposition Subpoena Narrowly Seeks Targeted Testimony**

11.     In public statements,[1] Amazon states that it provides "cloud computing resources" that "are hosted in multiple locations world-wide"; that these locations "are composed of AWS Regions" which are "separate geographic areas"; and that each AWS Region "is designed to be isolated from the other Regions," in a "design achieves the greatest possible fault tolerance and stability."  Amazon's blog posts also state: "When you view your resources, you see only the resources that are tied to the AWS Region that you specified. This is because AWS Regions are isolated from each other, and we don't automatically replicate resources across AWS Regions." Amazon's discrete AWS Regions include the region referred to as "Canada (Central)."

12.     10x and Harvard contend there is a possibility that Amazon's cloud computing services could nonetheless, contrary to Amazon's stated policies, be running Bruker's software on servers located outside Bruker's specified Canada Region and within the U.S.  Bruker therefore seeks testimony from Amazon confirming the veracity of its public statements, and that the Canada-Central-1 region consists of servers physically located somewhere in Canada.  Bruker

---

[1] https://docs.aws.amazon.com/AmazonRDS/latest/UserGuide/Concepts.RegionsAndAvailabilityZones.html; https://docs.aws.amazon.com/AWSEC2/latest/UserGuide/using-regions-availability-zones.html;  and  https://aws.amazon.com/blogs/architecture/what-to-consider-when-selecting-a-region-for-your-workloads/ (last visited April 25, 2025).

DECLARATION OF SAVANNAH CARNES                                         PAGE - 4

cannot rely on Amazon's public statements alone because they are potentially hearsay, and the Delaware Action plaintiffs contest their accuracy.

13.    To confirm this crucial factual issue, Bruker issued the Deposition Subpoena to Amazon identifying just three topics of testimony: (1) "The definition/structure of an AWS Region"; (2) "the compliance benefits of AWS Regions discussed in the AWS blog titled 'What to Consider When Selecting a Region for Your Workloads'"; and (3) the "location of Canada Central 1 servers." *See* **Exhibit 1**.  Precisely because of the importance of this information to the Delaware Action, Bruker consciously crafted its Deposition Subpoena to impose the least amount of burden on Amazon in providing it.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 25, 2025 in Tumwater, Washington.

_/s/ Noelle L. Chung, for Savannah Carnes_
Savannah Carnes, California State Bar No. 335438

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Plaintiffs,<br><br>  v.<br><br>BRUKER SPATIAL BIOLOGY, INC., BRUKER NANO, INC., AND BRUKER CORP.,<br><br>    Defendant, | C.A. No. 22-261-MFK<br><br>**JURY TRIAL DEMANDED** |

## **DEFENDANTS' NOTICE OF SUBPOENA**

PLEASE TAKE NOTICE THAT, pursuant to Federal Rules of Civil Procedure 45, Defendants Bruker Spatial Biology, Inc., Bruker Nano, Inc., and Bruker Corp. served the attached subpoena on Amazon Web Services, Inc.

The deposition shall take place remotely via Zoom before a court reporter and will continue until it is complete. The deposition may be recorded stenographically and/or by audiovisual means. A copy of the subpoena, including the full list of deposition topics, is enclosed.

Dated: March 14, 2025

OF COUNSEL:

Courtland L. Reichman
Savannah H. Carnes
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300 Redwood
Shores, CA  9406 Tel: (650) 623-1401
Fax: (650) 623-1449
Bruker-10X@reichmanjorgensen.com

Sarah Jorgensen
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Tel: (202) 894-7310
Bruker-10X@reichmanjorgensen.com

Christine E. Lehman (admitted *pro hac vice*)
David King (admitted *pro hac vice*)
Adam Adler (admitted *pro hac vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K St., NW
Washington, DC  20006
Tel: (202) 894.7310
Bruker-10X@reichmanjorgensen.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Concord Cheung (admitted *pro hac vice*)
August Melcher (admitted *pro hac vice*)
Karnik F. Hajjar (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Tel: (650) 802-3000
Fax: (650) 802-3100
NanoString.10X@weil.com

Christopher Pepe (admitted *pro hac vice*)
Kristin Sanford (admitted pro hac vice)
Amanda Branch (admitted *pro hac vice*)

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants*

Anne Corbett (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: (202) 682-7000
Fax: (202) 857-0940
NanoString.10X@weil.com

Eric S. Hochstadt (admitted *pro hac vice*)
Natalie C. Kennedy (admitted *pro hac vice*)
Spencer Talbot (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
NanoString.10X@weil.com

*Attorneys for Defendants Bruker Spatial
Biology, Inc., Bruker Nano, Inc. and Bruker
Corp.*

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

10x Genomics, Inc., et al.

_____
Plaintiff

v.

Bruker Spatial Biology, Inc. et al.

_____
Defendant

)
)
)
)
)
)

Civil Action No.   22-261-MFK

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                         Amazon Web Services, Inc.,
                    410 Terry Avenue North, Seattle, WA 98109
                    _____
                    *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  The definition/structure of an AWS Region; the compliance benefits of AWS Regions discussed in the AWS blog titled "What to Consider When Selecting a Region for Your Workloads"; location of Canada Central 1 servers.

| Place: Remote deposition conducted via Zoom. Court reporting service will provide videoconference link and instructions to all participants before deposition. | Date and Time: 04/04/2025 9:00 am |
|---|---|

The deposition will be recorded by this method:    Remote deposition recorded by stenographic/audiovisual.

❒ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    03/12/2025

            *CLERK OF COURT*

                                    OR

_____        _____
*Signature of Clerk or Deputy Clerk*              Savannah H. Carnes
                                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Bruker Spatial Biology
_____ , who issues or requests this subpoena, are:

Savannah Carnes, 1909 K Street NW, Suite 800, Washington DC 20006, scarnes@reichmanjorgensen.com,
202.894.7452

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  22-261-MFK

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 2

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

8

9  **10x Genomics, Inc., et al.**,

10          Plaintiff,

11  v.

12  **Bruker Spatial Biology, Inc., et al.,**

13          Defendant.

14

Proceedings in the United States
District Court for the District of
Delaware

Civil Action No. 22-261-MFK

**AMAZON WEB SERVICES, INC.'S
OBJECTIONS TO SUBPOENA**

DWT REF NO.: SUB1024302

15      Pursuant to Rule 45 of the Federal Rules of Civil Procedure, nonparty Amazon Web

16  Services, Inc. ("AWS") objects to the Subpoena to Testify at a Deposition in a Civil Action (the

17  "subpoena") from Defendant, Bruker Spatial Biology, Inc. ("Defendant") in the above-

18  referenced matter.  To the extent that a meet and confer regarding any of these objections is

19  necessary, please contact undersigned counsel.

20                          **I.  GENERAL OBJECTIONS**

21      **1.      Vague and Ambiguous**.  AWS objects to the subpoena's use of vague and

22  ambiguous terms, including, but not limited to, "definition," "purpose," "AWS Region,"

23  "compliance benefits," "AWS Regions," "discussed," "AWS blog," "titled," "What to Consider

24  When Selecting a Region for Your Workloads," "location," "Canada Central 1," and "servers."

25      **2.      Failure to Reduce Burden on Nonparty.**  AWS objects to the subpoena for

26  failing to take reasonable efforts to reduce the burden and expense on nonparty AWS.

27  Nonparty status is a significant factor a court must consider when assessing undue burden.

AWS' OBJECTIONS TO SUBPOENA - 1

*United States v. Amerigroup Illinois, Inc.,* 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005). In particular, AWS objects to the extent the subpoena purports to require AWS to appear for a deposition as unreasonable, unduly burdensome, and disruptive of nonparty AWS' business. A deposition is unnecessary and imposes an undue burden on nonparty AWS where less burdensome means, such as the production of a narrow set of authenticated documents, are available.

**3.     Failure to Reasonably Limit Time Period.**  AWS objects to the failure to reasonably limit the time period covered by the subpoena—which contain no time period limitation *whatsoever*—as unduly burdensome and overbroad.

**4.     No Showing of Relevance.**  Amazon objects to the subpoena because it seeks confidential information without making a showing of relevance as to any issue in the litigation involving the parties or any showing that the requests are proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

**5.     Failure to Pay Witness Fee.**  AWS objects to the subpoena because it purports to demand that a witness appear for deposition but fails to pay any witness fee as required by federal law.  *See* Fed. R. Civ. P.  45(b)(1).

**6.     Improper Place of Compliance and/or Examination.**  AWS objects to the subpoena as improper to the extent the demanded place of production and/or examination (Remote deposition conducted via Zoom) is not within 100 miles of where AWS resides or regularly transacts business in person as required by federal law.  *See* Fed. R. Civ. P. 45(c)(1), (c)(2)(A).

**7.     Unreasonable Time for Compliance.**  AWS objects to the demanded time of compliance, April 4, 2025, just three weeks after as unreasonable and improper, especially given the volume and nature of the information sought, and is contrary to Federal Rule of Civil Procedure 45.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Ave., Ste. 3300, Seattle, WA 98104-1610
206-622-3150 main · 206-757-7700 fax

1    **8.    Failure to Provide Notice.**  AWS objects to the subpoena as failing to

2  adequately show that prior notice has been provided to other parties to the litigation, as required

3  by Fed. R. Civ. P. 45(a)(4).  Failure to comply with this requirement renders the subpoena void.

4    **9.    Reservation of Rights.** These objections apply to each request in the subpoena.

5  AWS reserves its right to supplement, amend, correct, or modify its responses herein.

6

7    DATED this 25th day of March, 2025.

8                                            DAVIS WRIGHT TREMAINE LLP
                                             Attorneys for Amazon Web Services, Inc.
9

10                                           By */s/  Ramie O. Snodgrass*
                                                Ramie O. Snodgrass, WSBA #40689
11                                              Khadija Syed, CA SBN #328163
                                                920 Fifth Avenue, Suite 3300
12                                              Seattle, WA  98104-1610
                                                Telephone: 415-276-4842
13                                              Email: KhadijaSyed@dwt.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Ave., Ste. 3300, Seattle, WA 98104-1610
206-622-3150 main · 206-757-7700 fax

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on March 25, 2025, I caused the foregoing document to be served

3   by electronic mail to the following:

4        Savannah Carnes
         Reichman Jorgensen Lehman & Feldberg LLP
5        1909 K Street NW, Suite 800
         Washington, DC 20006
6        scarnes@reichmanjorgensen.com

7

8        DATED this 25th day of March, 2025.

9                                           DAVIS WRIGHT TREMAINE LLP
                                            Attorneys for Amazon Web Services, Inc.
10

11                                          By /s/ Khadija Syed
                                               Khadija Syed, CA SBN #328163
12                                             Ramie O. Snodgrass, WSBA #40689
                                               920 Fifth Avenue, Suite 3300
13                                             Seattle, WA 98104-1610
                                               Telephone: 415-276-4842
14                                             Email: KhadijaSyed@dwt.com

15

16

17

18

19

20

21

22

23

24

25

26

27

AWS' OBJECTIONS TO SUBPOENA - 4

# EXHIBIT 3



**From:** Syed, Khadija <KhadijaSyed@dwt.com>
**Sent:** Thursday, April 24, 2025 3:34 PM
**To:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>
**Subject:** RE: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

> **CAUTION: EXTERNAL SENDER**

Just sent, thanks.

**Khadija Syed**
**Attorney,** Davis Wright Tremaine LLP

**P** 415.276.4842  **E** khadijasyed@dwt.com
**A** 50 California Street, 23rd Floor, San Francisco, CA 94111
**DWT.COM**

---

**From:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Sent:** Thursday, April 24, 2025 12:27 PM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

---

**[EXTERNAL]**

---

I can hop on a call at 3:30pm PT, would you please send an invite?

**From:** Syed, Khadija <KhadijaSyed@dwt.com>
**Sent:** Thursday, April 24, 2025 2:46 PM
**To:** Savannah Carnes <scarnes@reichmanjorgensen.com>

**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>
**Subject:** RE: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

**CAUTION: EXTERNAL SENDER**

Are you available today at 12:30 pm or 3:30 pm PT for a brief call to discuss?

Thanks,
Khadija

**Khadija Syed**
**Attorney,** Davis Wright Tremaine LLP
**P** 415.276.4842  **E** khadijasyed@dwt.com
**A** 50 California Street, 23rd Floor, San Francisco, CA 94111
**DWT.COM**

---

**From:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Sent:** Thursday, April 24, 2025 11:36 AM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

**[EXTERNAL]**

Hi Khadija,

Given the time that has passed and the lack of resolution--the subpoena was served on March 14, and we raised the possibility of a written deposition back on March 26, again on April 2, and followed up several times in the thread below--we plan to move forward with our motion to enforce tomorrow.

Best regards,
Savannah

**From:** Syed, Khadija
**Sent:** Thursday, April 24, 2025 12:34 PM
**To:** Savannah Carnes
**Cc:** King, Michelle; Crawford, Donna; Sukin, Annabelle; Wilson, Kiana; Adam Adler; Day, Alon; Howard, Jim; Christine E. Lehman
**Subject:** RE: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

### CAUTION: EXTERNAL SENDER

Hi Savannah,

We have escalated this matter and are still in the process of conferring with AWS and will need a bit more time to work through this. We anticipate having an update soon.

Best,
Khadija

**Khadija Syed**
**Attorney,** Davis Wright Tremaine LLP

**P** 415.276.4842  **E** khadijasyed@dwt.com
**A** 50 California Street, 23rd Floor, San Francisco, CA 94111

**DWT.COM**

---

**From:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Sent:** Thursday, April 24, 2025 5:27 AM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

[EXTERNAL]

Counsel,

We have not received any update since your April 17 message indicating that you were conferring with your client. We have met and conferred repeatedly and consider our obligations satisfied. We will file a motion to enforce compliance tomorrow.

Best,

Savannah

---

**From:** Syed, Khadija
**Sent:** Thursday, April 17, 2025 6:37 PM
**To:** Christine E. Lehman; Savannah Carnes
**Cc:** King, Michelle; Crawford, Donna; Sukin, Annabelle; Wilson, Kiana; Adam Adler; Day, Alon; Howard, Jim
**Subject:** RE: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

## CAUTION: EXTERNAL SENDER

Hi Christine,

We are conferring with our client and will circle back with an update soon.

Thanks,
Khadija

**Khadija Syed**
**Attorney,** Davis Wright Tremaine LLP

**P** 415.276.4842  **E** khadijasyed@dwt.com
**A** 50 California Street, 23rd Floor, San Francisco, CA 94111

**DWT.COM**

---

**From:** Christine E. Lehman <clehman@reichmanjorgensen.com>
**Sent:** Tuesday, April 15, 2025 2:54 PM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>; Savannah Carnes <scarnes@reichmanjorgensen.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>
**Subject:** RE: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

**[EXTERNAL]**

Hi Khadija,
In light of Amazon's continued refusal to provide a witness we intend to move to enforce compliance with the subpoena. Potential issues with future admissibility at trial do not excuse Amazon's refusal to comply with a Rule 45 subpoena. We consider any meet and confer obligation to have been met, but let us know if you disagree and wish to schedule another call.

Best,

Christine

---

**From:** Syed, Khadija <KhadijaSyed@dwt.com>
**Sent:** Friday, April 11, 2025 4:00 PM
**To:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>
**Subject:** RE: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

**CAUTION: EXTERNAL SENDER**

Hi Savannah,

As discussed, here is a sampling of cases discussing the inadmissibility of nonparty 30(b)(6) testimony (you'll find more if you search):

- *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2022 WL 2800911, at *5 (D. Del.) (June 27, 2022) – Explaining that "at trial, a non-party 30(b)(6) witness must have personal knowledge of matters about which he testifies, as required by Federal Rule of Evidence 602," and excluding testimony from a nonparty 30(b)(6) designee "as to any facts of which he does not have personal knowledge."
- *FTC v. Vyera Pharms., LLC*, 2021 WL 5300019, at *1-2 (S.D.N.Y.) (Nov. 15, 2021) – Stating that the personal knowledge requirement of Federal Rule of Evidence 602 "extends to Rule 30(b)(6) testimony when the corporation that responded to the Rule 30(b)(6) subpoena is not a party at the trial."
- *Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, 2014 WL 4983912, at *3 (M.D. Fla.) (Oct. 6, 2014) – "While Rule 30(b)(6) permits [the nonparty corporate designee's] deposition testimony to be based on matters outside his personal knowledge, Rule 602 limits his trial testimony to matters that are within his personal knowledge."

As to whether AWS would be amenable to a written deposition, as discussed during our call last week, that type of deposition tends to only be useful where there are narrow, discrete issues agreed upon by the parties to the litigation, which does not appear to be the case here. If circumstances have changed in this regard, please let us know. Additionally, the same admissibility issues would apply regardless of whether the deposition is taken by live testimony or written questions.

Best,

Khadija

**Khadija Syed**
**Attorney,** Davis Wright Tremaine LLP

**P** 415.276.4842  **E** khadijasyed@dwt.com
**A** 50 California Street, 23rd Floor, San Francisco, CA 94111

**DWT.COM**

---

**From:** Syed, Khadija
**Sent:** Thursday, April 10, 2025 2:57 PM
**To:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>
**Subject:** RE: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

Hi Savannah,

We will circle back on this shortly.

Thanks,
Khadija

**Khadija Syed**
**Attorney,** Davis Wright Tremaine LLP

**P** 415.276.4842  **E** khadijasyed@dwt.com
**A** 50 California Street, 23rd Floor, San Francisco, CA 94111

**DWT.COM**

---

**From:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Sent:** Thursday, April 10, 2025 2:49 PM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

**[EXTERNAL]**

Hi Khadija,

Did you have an answer? Thanks.

---

**From:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Sent:** Tuesday, April 8, 2025 5:10 PM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

Hi Khadija,

Have you had a chance to discuss a written deposition with your client? We also would be interested in seeing the case law you mentioned on the call about the admissibility of nonparty testimony.

Thanks,
Savannah

---

**From:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Sent:** Saturday, March 29, 2025 3:30 PM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

Hi Khadija,

Let's chat on Wednesday 4/2 at 11am PT / 2pm ET. Thanks!

---

**From:** Syed, Khadija <KhadijaSyed@dwt.com>
**Sent:** Friday, March 28, 2025 2:51 PM
**To:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>; Adam Adler <aadler@reichmanjorgensen.com>; Day, Alon <AlonDay@dwt.com>; Howard, Jim <JimHoward@dwt.com>
**Subject:** RE: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

**CAUTION: EXTERNAL SENDER**

Hi Savannah,

Thanks for chatting earlier this week.  Do you have time next week or the week after for a brief call to touch base on this?  Here are some times we are available:

- Wednesday, April 2 at 11 am PT
- Monday, April 7 between 12 pm and 1:30 pm PT
- Tuesday, April 8 at 1 pm or 2 pm PT

Please let me know if there is a time that works for you and I can circulate a calendar invite.

Thanks,
Khadija

**Khadija Syed**
**Attorney,** Davis Wright Tremaine LLP

**P** 415.276.4842  **E** khadijasyed@dwt.com
**A** 50 California Street, 23rd Floor, San Francisco, CA 94111

**DWT.COM**

---

**From:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Sent:** Wednesday, March 26, 2025 5:05 AM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>; Adam Adler <aadler@reichmanjorgensen.com>
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

[EXTERNAL]

Hi Khadija, thank you, I sent you a Teams invite for 12pm PT / 3pm ET today.  Please forward as necessary.

---

**From:** Syed, Khadija
**Sent:** Tuesday, March 25, 2025 5:34 PM
**To:** Savannah Carnes
**Cc:** King, Michelle; Crawford, Donna; Sukin, Annabelle; Wilson, Kiana; Christine E. Lehman; Adam Adler
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

**CAUTION: EXTERNAL SENDER**

Hi Savannah,

I'm available tomorrow after 11 am PT.  Feel free to circulate a calendar invite for a time that works for you.

Thanks,
Khadija

Get Outlook for iOS

---

**From:** Savannah Carnes <scarnes@reichmanjorgensen.com>
**Sent:** Tuesday, March 25, 2025 1:18:21 PM
**To:** Syed, Khadija <KhadijaSyed@dwt.com>
**Cc:** King, Michelle <MichelleKing@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>; Sukin, Annabelle <AnnabelleSukin@dwt.com>; Wilson, Kiana <KianaWilson@dwt.com>; Christine E. Lehman <clehman@reichmanjorgensen.com>; Adam Adler <aadler@reichmanjorgensen.com>
**Subject:** Re: Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

[EXTERNAL]

---

Hi Khadija,

Thank you for the email.  We'd like to discuss AWS's objections, and are available for a call Wednesday afternoon (ET), and all-day Thursday.  Please let me know what works best for you.

Best regards,
Savannah

---

**From:** Syed, Khadija
**Sent:** Tuesday, March 25, 2025 2:00 PM
**To:** Savannah Carnes
**Cc:** King, Michelle; Crawford, Donna; Sukin, Annabelle; Wilson, Kiana
**Subject:** Nonparty Amazon's Objections to Subpoena - 10x Genomics, Inc. v. Bruker Spatial Biology, Inc. (D. Del.) (SUB1024302)

**CAUTION: EXTERNAL SENDER**

Hi Savannah,

Attached please find nonparty Amazon Web Services, Inc.'s objections to the subpoena received from Defendant in the above-referenced matter.

Best,
Khadija



**Khadija Syed**
**Attorney** | Davis Wright Tremaine LLP

**P** 415.276.4842  **E** khadijasyed@dwt.com
**A** 50 California Street, 23rd Floor, San Francisco, CA
94111

**DWT.COM**     in

*NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*

*NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*

*NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*

*NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*

*NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If

*you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>NANOSTRING TECHNOLOGIES, INC.,<br><br>　　　　Defendant. | C.A. No. 22-cv-261-MFK<br><br>DEMAND FOR JURY TRIAL |

## SECOND AMENDED COMPLAINT

Plaintiffs 10x Genomics, Inc. ("10x") and President and Fellows of Harvard College ("Harvard") allege in their Second Amended Complaint for patent infringement against Defendant NanoString Technologies, Inc. ("NanoString") as follows:

## NATURE OF THE ACTION

1.　　　　This is an action for infringement of U.S. Patent Nos. 10,227,639 ("the 639 Patent"), 11,021,737 ("the 737 Patent"), 11,293,051 ("the 051 Patent"), 11,293,052 ("the 052 Patent"), 11,293,054 ("the 054 Patent"), and 11,542,554 ("the 554 Patent) (collectively, the "Asserted Patents"). This action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

## THE PARTIES

2.　　　　10x is a Delaware corporation with its principal place of business at 6230 Stoneridge Mall Road, Pleasanton, CA 94588.

3.　　　　10x is a pioneering innovator of genomics and sequencing technologies that are providing life science researchers and clinicians an unprecedented understanding of biology. By

elegantly combining its proprietary hardware, chemistry, and software, 10x has developed and brought to market award-winning products that give single cell and spatial views of complex biological systems. 10x's products have enabled previously infeasible forms of research in the life sciences in areas of critical importance to human health, including cancer research, neuroscience, immunology, infectious disease, and developmental biology.

4.      Harvard is a Massachusetts educational institution with a principal place of business in Cambridge, MA. Harvard is a patent owner and licensor for the Asserted Patents.

5.      On information and belief, NanoString is a Delaware corporation with its principal place of business in Seattle, WA.

6.      NanoString makes, uses, sells, offers to sell, exports, and/or imports in the United States products, services, and components that have been and are used to infringe one or more claims of the Asserted Patents.

## JURISDICTION AND VENUE

7.      Plaintiffs incorporate the foregoing paragraphs of the Second Amended Complaint by reference as if fully set forth herein.

8.      This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C § 1 *et seq.*, including in particular under 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendant, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because NanoString is a Delaware corporation and thus resides in this district.

## BACKGROUND

**A.     10x's Groundbreaking Single Cell and Spatial Technologies**

10.     10x is a life sciences technology company founded in 2012 in Pleasanton, California by Drs. Serge Saxonov and Benjamin Hindson. Since its inception, 10x has focused on building new technologies to enable breakthrough discoveries and accelerate the understanding of biology. To date, 10x has invested hundreds of thousands of hours and approximately $1 billion in research and development to invent, design, and develop its proprietary line of products for understanding biology at unprecedented resolution and scale. 10x continues to invest significant time and money to further innovate and bring ground-breaking new products and capabilities to market.

11.     10x is now a worldwide leader in genomics, the comprehensive study of biological systems at a molecular and cellular level. Since 10x's first commercial launch in 2015, 10x's expanding suite of products has fueled a revolution in genomics, winning wide acclaim and commercial success. 10x has achieved an installed base of more than 3,500 instruments around the world, including at all of the top 100 global research institutions and all of the top 20 global biopharmaceutical companies. In 2021, annual sales of 10x products exceeded $490 million, a 64% increase over 2020.

12.     Over 4500 scientific articles have been published based on data generated from 10x products, including hundreds of articles in top journals such as *Cell*, *Science*, and *Nature*. This scientific work details the use of 10x products to discover, for example: molecular mechanisms that lead to brain, breast and lung cancers; how the immune system reacts to COVID-19 infection; and a new type of lung cell that causes cystic fibrosis. The paradigm-changing nature of 10x's products has led to numerous accolades, including seven 10x products being named to *The Scientist* magazine's Top 10 Innovations list between 2015 and 2021.

13.     10x's Chromium platform has been essential to enabling single cell genomics—the study of biology at a cell-by-cell resolution and at a massive, system-wide scale, ushering in a single-cell revolution hailed by *Science* magazine as the 2018 "Breakthrough of the Year." Whereas traditional biology relies on "bulk analysis" in which tissue is analyzed as averages across the sample, 10x's breakthrough single cell products enable researchers to analyze samples on a single cell basis—for millions of cells per experiment—thereby preserving information that is specific to each cell in the sample. 10x's single cell products do this by putting a different "tag" (a nucleic acid barcode) on each single cell in a sample, which can then be analyzed using sequencers to read the contents. The Chromium X, which launched in July 2021 and enables expansion of single cell studies to million-cell experiments, is the latest addition to 10x's award-winning platform and was named a Top 10 Innovation in 2021 by *The Scientist* magazine. https://www.the-scientist.com/features/2021-top-10-innovations-69438.

14.     10x, through its Spatial Transcriptomics and later Visium products, has catalyzed the field of spatial analysis by providing commercial offerings that enable true spatial discovery. Spatial analysis allows the large-scale interrogation of biological analytes with their spatial context. In contrast to traditional techniques in which analytes from a biological tissue are blended and analyzed as an average from various parts of the tissue, spatial analysis preserves information about the positions of the analytes in the tissue. This allows researchers and clinicians to build a comprehensive map—a kind of Google Earth—of where each analyte is, so that function can be tied to location. 10x's innovative spatial products use a tagging approach, analogous to that used in its single cell products, where the tags indicate the location of the analyte in the tissue rather than the cellular origin of the analyte. In 2020, *Nature Methods* named spatially resolved transcriptomics its "Method of the Year" and featured 10x's spatial technology on the cover. *See*

https://www.nature.com/articles/s41592-020-01033-y. The 10x Visium Spatial Gene Expression product was named among the *Scientist* magazine's Top 10 Innovations in 2020. The power of Visium was again acknowledged in the February 2022 issue of *Science Translational Medicine*, in which a Visium study was a featured article and provided the cover illustration. *See* https://www.science.org/toc/stm/14/632.

### B.     10x Invests In Developing *In Situ* Technologies

15.     Most current molecular analyses, including single cell and spatial technologies, involve removing molecules from their native environment for analysis. *In situ* analysis, by contrast, aims to measure and analyze a large number of molecules directly in tissue samples and capture the precise location of those molecules at sub-cellular resolution.

16.     In 2020, 10x announced its acquisition of ReadCoor, Inc., founded based on George Church's work at Harvard, obtaining intellectual property, key technology advances, and deep talent and expertise in the emerging *in situ* field.

17.     On December 8, 2022, 10x Genomics commercially launched its Xenium Platform for In Situ Analysis, built from its investments in *in situ* technology. Xenium is a complete platform—including the Xenium Analyzer instrument, Xenium In Situ reagents and panels, Xenium Explorer software, and the full support of 10x's team of spatial experts—designed to create spatial maps of gene expression in the original tissue at true cellular and subcellular resolutions.

### C.     NanoString's Infringing CosMx SMI Platform and Technology Access Program

18.     Nearly half a year after 10x's widely observed acquisition, NanoString announced the launch of its Technology Access Program for the Spatial Molecular Imager in March 2021. On November 9, 2021, NanoString announced its new, commercially-branded CosMx Spatial

Molecular Imager (SMI), which is purported to provide spatially resolved mapping data and imaging for RNA and protein at a single-cell and subcellular resolution. NanoString markets the CosMx SMI as providing "high-plex *in situ* analysis" with "quantification and visualization of up to 1,000 RNA and 100 validated protein analytes." https://www.nanostring.com/products/cosmx-spatial-molecular-imager/overview/. Through its CosMx SMI Technology Access Program ("CosMx TAP"), NanoString offers to its customers an *in situ* spatial molecular imaging service using its CosMx SMI platform. NanoString practices the Asserted Patents by using the CosMx SMI workflow on behalf of its own scientists and researchers and for its CosMx SMI TAP customers. Through the CosMx SMI TAP, customers submit tissue samples to NanoString's Translational Services Lab. NanoString processes samples using its CosMx SMI platform and provides customers with reports including raw data and analyzed results. *See* https://www.nanostring.com/products/cosmx-spatial-molecular-imager/technology-access-program/.

19.     NanoString advertises, offers for sale, and now sells, ships, and installs the CosMx SMI platform to and for customers in the United States. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). NanoString's CosMx SMI platform customers, collaborators, and partners, including for example researchers at Wake Forest University, have practiced and continue to practice one or more claims of the Asserted Patents by using the CosMx SMI workflow and with NanoString's knowledge. *See* Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx).

20. The "Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, imported into the United States and/or supplying from the United States by or on behalf of NanoString in connection with NanoString's CosMx Spatial Molecular Imaging ("CosMx SMI") platform. The Accused Instrumentalities include, for example and without limitation, instruments, software, reagents and consumables used by or provided by NanoString in connection with its CosMx SMI Platform.

### D.     The Patents In Suit

21. Through the development and subsequent making, using, selling, offering for sale, importing and exporting of the Accused Instrumentalities, and performing every step of the patented invention by using products, services, devices, systems, and/or components of systems that embody the patented inventions, such as the CosMx SMI platform NanoString has and continues to infringe the "Asserted Patents":

(a)     U.S. Patent No. 10,227,639, entitled "Compositions and Methods for Analyte Detection" (Exhibit 1);

(b)     U.S. Patent No. 11,021,737, entitled "Compositions and Methods for Analyte Detection" (Exhibit 2);

(c)     U.S. Patent No. 11,293,051, entitled "Compositions and Methods for Analyte Detection" (Exhibit 3);

(d)     U.S. Patent No. 11,293,052, entitled "Compositions and Methods for Analyte Detection" (Exhibit 4);

(e)     U.S. Patent No. 11,293,054, entitled "Compositions and Methods for Analyte Detection" (Exhibit 5); and

(f)     U.S. Patent No. 11,542,554, entitled "Method and Apparatus for Volumetric Imaging" (Exhibit 6).

22. The 639 Patent was duly and legally issued on March 12, 2019, by the United States Patent and Trademark Office. U.S. Application No. 14/366,486, which issued as the 639 Patent,

claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012, and Provisional Application No. 61/579,265, filed on December 22, 2011. Daniel Levner, Je-hyuk Lee, George M. Church, and Michael Super are named inventors on the face of the 639 Patent.

23.     Harvard is the sole legal owner of the 639 Patent. A true and correct copy of the assignment abstract and record of the 639 Patent is attached as Exhibit 7. The 639 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

24.     The 737 Patent was duly and legally issued on June 1, 2021, by the United States Patent and Trademark Office. U.S. Application No. 16/941,585, which issued as the 737 Patent, claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012, Provisional Application No. 61/777,383, filed on March 12, 2013, and Provisional Application No. 61/579,265, filed on December 22, 2011. George M. Church, Je-hyuk Lee, Daniel Levner, and Michael Super are named inventors on the face of the 737 Patent.

25.     Harvard is the sole legal owner of the 737 Patent. A true and correct copy of the assignment abstract and record of the 737 Patent is attached as Exhibit 8. The 737 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

26.     The 051 Patent was duly and legally issued on April 5, 2022, by the United States Patent and Trademark Office. U.S. Application No. 17/238,642, which issued as the 051 Patent, claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012, Provisional Application No. 61/777,383, filed on March 12, 2013, and Provisional Application No. 61/579,265, filed on December 22, 2011. George M. Church, Je-Hyuk Lee, Daniel Levner, and Michael Super are the named inventors of the 051 Patent.

27.     Harvard is the sole legal owner of the 051 Patent. A true and correct copy of the assignment abstract and record of the 051 Patent is attached as Exhibit 9. The 051 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

28.     The 052 Patent was duly and legally issued on April 5, 2022, by the United States Patent and Trademark Office. U.S. Application No. 17/238,682, which issued as the 052 Patent, claims the benefit of PCT Application No. PCT/US12/71398, filed December 21, 2012, U.S. Provisional Application No. 61/579,265, filed December 22, 2011, and Provisional Application No. 61/777,373, filed March 12, 2013. George M. Church, Je-Hyuk Lee, Daniel Levner, and Michael Super are the named inventors of the 052 Patent.

29.     Harvard is the sole legal owner of the 052 Patent. A true and correct copy of the assignment abstract and record of the 052 Patent is attached as Exhibit 9. The 052 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

30.     The 054 Patent was duly and legally issued on April 5, 2022, by the United States Patent and Trademark Office. U.S. Application No. 16/393,215, which issued as the 054 Patent, claims the benefit of PCT Application No. PCT/US12/71398, filed December 21, 2012, and U.S. Provisional Application No. 61/579,265, filed December 22, 2011. Daniel Levner, Je-Hyuk Lee, George M. Church, and Michael Super are the named inventors of the 054 Patent.

31.     Harvard is the sole legal owner of the 054 Patent. A true and correct copy of the assignment abstract and record of the 054 Patent is attached as Exhibit 10. The 054 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

32.     The 554 Patent was duly and legally issued on January 3, 2023, by the United States Patent and Trademark Office. U.S. Application No. 17/393,534, which issued as the 554 Patent, claims the benefit of PCT Application No. PCT/US2016/060279, filed November 3, 2016, and U.S. Provisional Application No. 62/250,182, filed November 3, 2015. Evan R. Daugharthy, Richard C. Terry, Je-Hyuk Lee, George M. Church, and Benjamin W. Pruitt are the named inventors of the 054 Patent.

33.     Harvard is the sole legal owner of the 554 Patent. A true and correct copy of the assignment abstract and record of the 554 Patent is attached as Exhibit 11. The 054 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

34.     NanoString has been on notice of the 639 and 737 Patents and NanoString's infringement thereof through use of the Accused Instrumentalities since at least February 28, 2022, when Plaintiffs filed their Complaint in this action and attached detailed infringement claim charts. NanoString has been on notice of the 051, 052, and 054 Patents and NanoString's infringement thereof through use of the Accused Instrumentalities since at least May 12, 2022, when Plaintiffs filed their First Amended Complaint in this action and attached detailed infringement claim charts. On information and belief, NanoString has been on notice of the 554 Patent since before the Second Amended Complaint, on or around its issuance on January 3, 2023, and no later than February 2, 2023, when NanoString's litigation counsel was notified of the issuance of the 554 Patent and that 10x planned to amend its pleadings to assert infringement of the 554 Patent. NanoString was contemporaneously on notice of how NanoString and other users of NanoString's CosMx SMI infringe the 554 Patent as a consequence of its receipt of the Complaint, the First Amended Complaint, and the proposed Second Amended Complaint.

35.     After Plaintiffs' February 28 Complaint and May 12 First Amended Complaint, NanoString has continued to expand and promote the infringing Accused Instrumentalities. For example, at the July 2022 AGBT meetings in Orlando, NanoString announced the CosMx SMI platform. *See* Exhibit 12 (https://www.genengnews.com/sponsored/exploring-spatial-biology-at-every-scale/). *See also* April 6, 2022 Joe Beechem podcast, https://mendelspod.com/podcasts/new-generation-comfortable-doing-thousand-things-time-reinventing-life-science-says-joe/. *See also* August 18, 2022 NanoString Paid Advertisement, https://www.nature.com/articles/d42473-022-00161-7. *See also* March 2, 2022 CosMx SMI Video, https://www.youtube.com/watch?v=aFq-j8oyUeg&list=PLkLM_7LgbwnaLXudTmhQrvR3JhDLB5ez2. *See also* April 19, 2022 Joe Beechem marketing video, https://www.youtube.com/watch?v=-ObG3sDJT28&list=PLkLM_7LgbwnannZW-f-tuMenQMT9QNo40. And in the face of its knowledge of the Asserted Patents and allegations of infringement thereof, NanoString announced its commercial launch and first shipments of the Accused Instrumentalities in December 2022. *See* Exhibit 13  (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform).

## COUNT I: Infringement of U.S. Patent No. 10,227,639

36.     Plaintiffs incorporate and reallege paragraphs 1 - 35 above as if fully set forth herein.

37.     NanoString has infringed and continues to infringe one or more claims of the 639 Patent, including without limitation claim 20, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the Accused Instrumentalities and/or components thereof. Attachment A provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

38.    NanoString, without authority and with knowledge of the 639 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 639 Patent, including without limitation claim 20, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 639 Patent including as described in Attachment A. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities.                *See*                Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 639 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 639 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and

encouragement include, for example, distributing the documentation cited in Attachment A, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 639 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 639 Patent and of its own infringement and the infringement by others as a result of the Complaint filed on February 28, 2022.

39.     NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 639 Patent, including without limitation claim 20, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment A by NanoString's customers and end users. *See e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 639 Patent by using the Accused Instrumentalities

in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 639 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the 639 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 639 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment A. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 639 Patent and as to the fact that at least the CosMx instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

40.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 639 Patent and the infringement of the 639 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 639 Patent since at least the February 28, 2022 Complaint as well as the May 12, 2022 First Amended Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship,

install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraph 34. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

41.     NanoString's infringement has been willful since at least February 28, 2022.

42.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 639 Patent.

43.     Unless NanoString is enjoined from infringing the 639 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT II: Infringement of U.S. Patent No. 11,021,737

44.     Plaintiffs incorporate and reallege paragraphs 1 - 43 above as if fully set forth herein.

45.     NanoString has infringed and continues to infringe one or more claims of the 737 Patent, including without limitation claims 4, 16, 18, 21, and 47, , pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the Accused Instrumentalities and/or components thereof. Attachment B provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

46.     NanoString, without authority and with knowledge of the 737 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 737 Patent, including without limitation claims 4, 16, 18, 21, and 47, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused

15

Instrumentalities in the United States in a manner that infringes one or more claims of the 737 Patent including as described in Attachment B. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 737 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 737 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment B, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual

and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 737 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 737 Patent and of its own infringement and the infringement by others as a result of the Complaint filed on February 28, 2022.

47.     NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 737 Patent, including without limitation claims 4, 16, 18, 21, and 47,, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment B by NanoString's customers and end users. *See e.g.*, Exhibit 14        (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 737 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 737 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the

737 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 737 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment B. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 737 Patent and as to the fact that at least the CosMx instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

48.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 737 Patent and the infringement of the 737 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 737 Patent since at least the February 28, 2022 Complaint as well as the May 12, 2022 First Amended Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship, install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraphs 34-35. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

49.     NanoString's infringement has been willful since at least February 28, 2022.

50.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 737 Patent.

51.     Unless NanoString is enjoined from infringing the 737 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT III: Infringement of U.S. Patent No. 11,293,051

52.     Plaintiffs incorporate and reallege paragraphs 1 – 51 above as if fully set forth herein.

53.     NanoString has infringed and continues to infringe one or more claims of the 051 Patent, including without limitation claims 3, 26, 48, 53, 66, 77, 85, and 96, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the Accused Instrumentalities and/or components thereof. Attachment C provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

54.     NanoString, without authority and with knowledge of the 051 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 051 Patent, including without limitation claims 3, 26, 48, 53, 66, 77, 85, and 96, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 051 Patent including as described in Attachment C. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no

later than December 6, 2022, the date of NanoString's announcement that it had begun commercial

shipments of the Accused Instrumentalities. *See* Exhibit 13

(https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-

Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-

Platform). On information and belief, the first direct infringement of the 051 Patent by

NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the

date of NanoString's announcement that a team of researchers at Wake Forest had used the

Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-

details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-

Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of

NanoString's customers and end users of the Accused Instrumentalities have directly infringed

and continue to directly infringe the 051 Patent by using the Accused Instrumentalities in

accordance with NanoString's instructions and encouragement. NanoString's instruction and

encouragement include, for example, distributing the documentation cited in Attachment C, as

well as user guides, sample and slide preparation manuals, training decks, and published articles.

On information and belief, NanoString's instruction and encouragement further include, for

example, on-site installation of CosMx instruments at customers' facilities, on-site training and

repairs, phone and email support, instrument and software updates, and distribution of webinars

and other training videos. NanoString provides this instruction and encouragement to its actual

and prospective customers and end users with the knowledge and intent that doing so results in the

infringement of one or more method claims of the 051 Patent by those customers and end users

and/or in their performing each step of one or more methods recited in those claims. As explained

below, on information and belief, NanoString acts knowingly and/or willfully blind as to the

existence of the 051 Patent and of its own infringement and the infringement by others as a result of the First Amended Complaint filed on May 12, 2022.

55. NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 051 Patent, including without limitation claims 3, 26, 48, 53, 66, 77, 85, and 96,, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment C by NanoString's customers and end users. *See e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 051 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 051 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the 051 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the

Accused Instrumentalities, directly infringe the asserted claims of the 051 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment C. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 051 Patent and as to the fact that at least the CosMx instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

56.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 051 Patent and the infringement of the 051 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 051 Patent since at least the May 12, 2022 First Amended Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship, install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraphs 34-35. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

57.     NanoString's infringement has been willful since at least May 12, 2022.

58.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 051 Patent.

59.     Unless NanoString is enjoined from infringing the 051 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT IV: Infringement of U.S. Patent No. 11,293,052

60.    Plaintiffs incorporate and reallege paragraphs 1 – 59 above as if fully set forth herein.

61.    NanoString has infringed and continues to infringe one or more claims of the 052 Patent, including without limitation claims 26, 35, 65, 73, and 75, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the Accused Instrumentalities and/or components thereof. Attachment D provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

62.    NanoString, without authority and with knowledge of the 052 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 052 Patent, including without limitation claims 26, 35, 65, 73, and 75, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 052 Patent including as described in Attachment D. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 052 Patent by

NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 052 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment D, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 052 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 052 Patent and of its own infringement and the infringement by others as a result of the First Amended Complaint filed on May 12, 2022.

63.    NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 052 Patent, including without limitation claims

26, 35, 65, 73, and 75, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment D by NanoString's customers and end users. *See e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 052 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 052 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the 052 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 052 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment D. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 052 Patent and as to the fact that at least the CosMx instruments and reagents are especially

made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

64.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 052 Patent and the infringement of the 052 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 052 Patent since at least the May 12, 2022 First Amended Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship, install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraphs 34-35. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

65.     NanoString's infringement has been willful since at least May 12, 2022.

66.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 052 Patent.

67.     Unless NanoString is enjoined from infringing the 052 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT V: Infringement of U.S. Patent No. 11,293,054

68.     Plaintiffs incorporate and reallege paragraphs 1 - 67 above as if fully set forth herein.

69.     NanoString has infringed and continues to infringe one or more claims of the 054 Patent, including without limitation claim 18, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the

United States without authority the Accused Instrumentalities and/or components thereof. Attachment E provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

70. NanoString, without authority and with knowledge of the 054 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 054 Patent, including without limitation claim 18, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 054 Patent including as described in Attachment E. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 054 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of

NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 054 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment E, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 054 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 054 Patent and of its own infringement and the infringement by others as a result of the First Amended Complaint filed on May 12, 2022.

71.     NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 054 Patent, including without limitation claim 18, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment E by NanoString's customers and end users. *See e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-

of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 054 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 054 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the 054 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 054 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment E. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 054 Patent and as to the fact that at least the CosMx instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

72. On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 054 Patent and the infringement of the 054 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 054 Patent since at least the May 12, 2022 First Amended

Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship, install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraphs 34-35. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

73.     NanoString's infringement has been willful since at least May 12, 2022.

74.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 054 Patent.

75.     Unless NanoString is enjoined from infringing the 054 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT V: Infringement of U.S. Patent No. 11,542,554

76.     Plaintiffs incorporate and reallege paragraphs 1 – 75 above as if fully set forth herein.

77.     The "554 Patent Accused Products" are all NanoString's CosMx Spatial Molecular Imager ("CosMx" or "CosMx SMI") Systems, including instruments, components, and consumables, that are made, used, performed, offered to sell, sold, exported, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's CosMx SMI. The 554 Patent Accused Products include, for example and without limitation, NanoString's CosMx SMI and all products and components sold by NanoString for use in NanoString's CosMx system.

78.     NanoString has infringed and continues to infringe one or more claims of the 554 Patent, including without limitation claim 36, pursuant to 35 U.S.C. § 271(a), literally or under the

doctrine of equivalents, by making and/or using, offering to sell, selling, exporting, and/or importing into the United States without authority the 554 Patent Accused Products and/or components thereof. Attachment F provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 554 Patent Accused Products. NanoString's infringement has been willful since at least January 3, 2023 and continues to be willful.

79.     NanoString, without authority and with knowledge of the 554 Patent, has actively induced since at least January 3, 2023, and continues to actively induce infringement of one or more claims of the 554 Patent, including without limitation claim 36, under 35 U.S.C. § 271(b) by intentionally instructing or otherwise encouraging others in the United States, including NanoString's customers and end users such as scientists working at laboratories, to make and/or use the claimed systems, such as by assembling, installing, and using the CosMx SMI platform in their research laboratories. Such making and using of the claimed systems constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the 554 Patent by such third parties, including as described in Attachment F. On December 6, 2022, NanoString announced that it had begun commercial shipments of the 554 Patent Accused Products. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more claims of the 554 Patent by those customers and end users. One or more of NanoString's customers and end users of the 554 Patent Accused Products have directly infringed and continue to directly infringe the 554 Patent by assembling and using the infringing 554 Patent Accused Products in accordance with NanoString's

instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment F and incorporated herein by reference. On information and belief, the first direct infringement of the 554 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the 554 Patent Accused Products. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 554 Patent by assembling and using the Accused Products in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment F, as well as other user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 554 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 554 Patent and of its own infringement and the infringement by others by no later than January 3, 2023, the date of the issuance of the 554 Patent.

80.     On information and belief, NanoString has actively induced since at least January 3, 2023, and continues to actively induce infringement of one or more claims of the 554 Patent, including without limitation claim 36, pursuant to 35 U.S.C. § 271(f)(1) by without authority supplying or causing to be supplied from the United States the CosMx SMI and/or components thereof, such as the CosMx SMI instrument, software, and computing system, and other materials that comprise all or a substantial portion of the components of the claims of the 554 Patent, where such components are uncombined in whole or in part in such manner to actively induce the combination of such components outside the United States in a manner that would infringe the 554 Patent if such combination occurred in the United States. NanoString's inducing acts include providing instructions and training for assembly outside the United States by NanoString's customers and end users of the CosMx SMI and/or components thereof, including the instrument, monitor, plates, and other materials, so that the CosMx SMI System may be used according to the training and instructions provided by NanoString.

81.     NanoString has contributed to the infringement since at least January 3, 2023, and continues to contribute to the infringement of one or more claims of the 554 Patent, including without limitation claim 36, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale material components of the claimed system, or has others perform such acts on its behalf, as described in Attachment F by NanoString's customers and end users. The CosMx SMI platform, including the instruments and reagents, was designed specifically to be made and used in a manner that infringes the asserted claims of the 554 Patent. For example, and without limitation, CosMx SMI platform is a material component of the claimed invention. When the CosMx platform components are assembled and used together, the claimed system is completed and claim 36 of the 554 Patent is infringed, as described for one example in Attachment F. Moreover, as shown in

NanoString's instructional materials in which no alternative assembly or use of the CosMx SMI is described, there is no other substantial use for the CosMx SMI platform. Thus, the CosMx SMI is a material part of the claimed inventions of the 554 Patent that when assembled by NanoString's customers and end users results in infringement. As a result of NanoString's selling, and/or offering for sale of the CosMx SMI, other entities on information and belief assemble and use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of the 554 Patent Accused Products, directly infringe the asserted claims of the 554 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment F. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 554 Patent claims and as to the fact that the CosMx SMI platform and reagents are especially made and adapted for this use in an infringing manner, is not a staple article of commerce, and does not have substantial non-infringing uses.

82.    On information and belief, NanoString has contributed to the infringement since at least January 3, 2023, and continues to contribute to the infringement of one or more claims of the 554 Patent, including without limitation claim 36, pursuant to 35 U.S.C. § 271(f)(2) by without authority supplying or causing to be supplied from the United States components of the CosMx SMI system, such as the CosMx SMI instrument, which are especially made or especially adapted for use in practicing the claims of the 554 Patent and are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States in the same way and for the same reasons as described in paragraph 81 above. NanoString supplies or

causes to be supplied from the United States components of the CosMx SMI System such as the instrument and components thereof that are assembled outside the United States by NanoString's customers and end users of the CosMx SMI.

83.    On information and belief, NanoString was aware of and has acted and continues to act with willful blindness to the existence of the 554 Patent and the infringement of the 554 Patent as described above by NanoString and by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew, should have known, or was willfully blind to the existence of the 554 Patent on or around the issuance date of the 554 Patent (January 3, 2023) and in no event later than February 2, 2023, for the reasons described above as a result of the present and on-going litigation and due to the notice provided to NanoString's litigation counsel on February 2, 2023, of the issuance of the 554 Patent and Plaintiffs' intent to assert the 554 Patent against NanoString in this amended pleading.

84.    Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 554 Patent.

85.    NanoString's infringement of the 554 Patent has been willful since at least February 2, 2023, and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 554 Patent and the infringement of the 554 Patent as described above, and has proceeded to design, develop, market, and sell the 554 Patent Accused Products in an attempt to compete with 10x, with full knowledge of the 554 Patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased

damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

86. Unless NanoString is enjoined from infringing the 554 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Products will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter the following relief in its favor and against NanoString:

A. For entry of judgment that the 639 Patent, 737 Patent, 051 Patent, 052 Patent, 054 Patent, and 554 Patent have been and continue to be directly and/or indirectly infringed by NanoString, either literally or under the doctrine of equivalents;

B. For a declaration that each of the Asserted Patents is valid and enforceable;

C. For permanent injunctions enjoining the aforesaid acts of infringement by NanoString, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them, including related individuals and entities, customers, representatives, distributors, and dealers. In the alternative, if the Court finds that an injunction is not warranted, Plaintiffs request an award of post-judgment royalty to compensate for future infringement;

D. A judgment that NanoString's infringement of one or more claims of the Asserted Patents has been and continues to be willful;

E. An award of all monetary relief adequate to compensate for damages resulting from NanoString's infringement, including lost profits but in no event less than a reasonable royalty under 35 U.S.C. § 284 for NanoString's infringement, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

F.     A declaration that the case is an exceptional case and that NanoString be required to pay Plaintiffs' attorneys' fees pursuant to 35 U.S.C. § 285; and

G.     A judgment awarding Plaintiffs such other and further relief as the Court may deem just, reasonable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

Of Counsel:

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
Tensegrity Law Group LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA  94065
(650) 802-6000

Samantha Jameson
Ronald J. Pabis
Kiley White
Tensegrity Law Group LLP
8260 Greensboro Drive, Suite 260
McLean, VA  22102-3848
(650) 802-6000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Cameron P. Clark*

Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for 10x Genomics, Inc.*

Of Counsel:

Michael J. Tuteur
Ruben J. Rodrigues
Geoffrey M. Raux
Foley & Lardner LLP
111 Huntington Avenue, Suite 2500
Boston, MA  02199
(617) 502-3284

MORRIS JAMES LLP

*/s/ Cortlan S. Hitch*

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for President and Fellows
of Harvard College*

March 1, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 1, 2023, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                            *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Edward R. Reines, Esquire                                       *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
Yiqun Zhang, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Amanda Branch, Esquire                                           *VIA ELECTRONIC MAIL*
Christopher M. Pepe, Esquire
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Natalie C. Kennedy, Esquire                                    *VIA ELECTRONIC MAIL*
Yi Zhang, Esquire
767 Fifth Avenue
New York, NY  10153-0019
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

*/s/ Cameron P. Clark*
_____
Cameron P. Clark (#6647)

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) |
| 10x and Harvard, | ) ) |
| v. | ) C.A. No. 22-261 (MFK) |
| NANOSTRING TECHNOLOGIES, INC., | ) **JURY TRIAL DEMANDED** ) |
| Defendant. | ) ) |

## NANOSTRING TECHNOLOGIES, INC. ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO 10X AND HARVARD' SECOND AMENDED COMPLAINT

Defendant NanoString Technologies, Inc. ("NanoString"), answers and responds to each of the allegations in the Second Amended Complaint ("SAC") of 10x and Harvard 10x Genomics, Inc. ("10x") and President and Fellows of Harvard College ("Harvard") (collectively "10x and Harvard"). Unless expressly admitted, NanoString denies each and every allegation in 10x and Harvard' SAC. To the extent the allegations in the SAC purport to characterize the nature or contents of the Exhibits to the SAC, NanoString lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies them. Additionally, to the extent that the headings or any other non-numbered statements in the SAC contain any allegations, NanoString denies each and every such allegation.

## NATURE OF THE ACTION

1. NanoString admits that the SAC purports to state a claim for patent infringement of United States Patent Nos. 10,227,639 ("the 639 Patent), 11,021,737 ("the 737 Patent"), 11,293,051 ("the 051 Patent"), 11,293,052 ("the 052 Patent"), 11,293,054 ("the 054 Patent"), and 11,542,554 (the "554 Patent") (collectively, the "Asserted Patents") arising under the patent laws

of the United States, Title 35, United States Code, including 35 U.S.C. § 271.  Except as so admitted, NanoString denies any remaining allegations in paragraph 1.

## THE PARTIES

2.      Admitted.

3.      Denied.

4.      NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 4 and on that basis denies them.

5.      NanoString admits that it is a Delaware Corporation with its principal place of business is located in Seattle, WA. Except as so admitted, NanoString denies any remaining allegations in paragraph 5.

6.      Denied.

## JURISDICTION AND VENUE

7.      NanoString incorporates by reference and restates its responses to paragraphs 1-6 of the SAC as though fully set forth herein.

8.      NanoString admits that the SAC purports to state a claim for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., including in particular 35 U.S.C. §§ 271. NanoString further admits that this Court has subject matter jurisdiction over causes of action for alleged patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      NanoString admits that it is an entity organized under the laws of Delaware and that venue is proper in this District. Except as so admitted, NanoString denies any remaining allegations of paragraph 9.

### A.      Response to Allegations Regarding 10x's Products

10.      NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 10 and on that basis denies them.

11.     NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 11 and on that basis denies them.

12.     NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 12 and on that basis denies them.

13.     NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 13 and on that basis denies them.

14.     NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 14 and on that basis denies them.

**B.      Response To Allegations Regarding 10x and *In Situ* Technologies**

15.     Paragraph 15 of the SAC includes allegations that are vague, ambiguous, and incomplete, and on that basis NanoString denies the allegations of paragraph 15.

16.     NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 16 and on that basis denies them.

17.     NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 17 and on that basis denies them.

**C.      Response to Allegations Regarding NanoString's Products**

18.     NanoString admits that it announced the launch of its Technology Access Program for the Spatial Molecular Imager Platform in March 2021.  NanoString further admits that it issued a press release referencing the new CosMx Spatial Molecular Imager in November 2021.  NanoString admits that Paragraph 18 accurately quotes a portion of NanoString's website.  Paragraph 18 of the SAC further includes allegations that purport to characterize technical aspects of NanoString's products in a manner that is vague, ambiguous, and incomplete, and on that basis NanoString denies the remaining allegations of paragraph 18.  NanoString further denies that it

practices the Asserted Patents by using the CoxMx SMI workflow on behalf of its own scientists and researchers and for its CosMx SMI TAP customers.

19.     NanoString admits that it advertises, offers for sale, and now sells and ships the CosMx SMI platform to and for customers in the United States.  Paragraph 19 of the SAC further includes allegations that are vague, ambiguous, and incomplete, and on that basis NanoString denies the remaining allegations of paragraph 19.

20.     NanoString admits that it makes, uses, sells, and supplies products, components, and services in connection with NanoString's CosMx Spatial Molecular Imaging platform. Paragraph 20 of the SAC otherwise includes allegations that purport to characterize NanoString's products in a manner that is vague, ambiguous, and incomplete, and on that basis NanoString denies the remaining allegations of paragraph 20.

### D.     Response to Allegations Regarding the Patents In Suit

21.     Denied.

22.     NanoString admits that, on its face, the 639 Patent states that it was issued on March 12, 2019 and that it lists the named inventors as Daniel Levner, Jehyuk Lee, George M. Church, and Michael Super.  Except as so admitted, NanoString denies any remaining allegations of paragraph 22.

23.     NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 23 and on that basis denies them.

24.     NanoString admits that, on its face, the 737 Patent states that it was issued on June 1, 2021 and that it lists the named inventors as Daniel Levner, Jehyuk Lee, George M. Church, and Michael Super.  Except as so admitted, NanoString denies any remaining allegations of paragraph 24.

25.    NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 25 and on that basis denies them.

26.    NanoString admits that, on its face, the 051 Patent states that it was issued on April 5, 2022, and that it lists the named inventors as Daniel Levner, Jehyuk Lee, George M. Church, and Michael Super.  Except as so admitted, NanoString denies any remaining allegations of paragraph 26.

27.    NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 27 and on that basis denies them.

28.    NanoString admits that, on its face, the 052 Patent states that it was issued on April 5, 2022, and that it lists the named inventors as Daniel Levner, Jehyuk Lee, George M. Church, and Michael Super.  Except as so admitted, NanoString denies any remaining allegations of paragraph 28.

29.    NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 29 and on that basis denies them.

30.    NanoString admits that, on its face, the 054 Patent states that it was issued on April 5, 2022, and that it lists the named inventors as Daniel Levner, Jehyuk Lee, George M. Church, and Michael Super.  Except as so admitted, NanoString denies any remaining allegations of paragraph 30.

31.    NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 31 and on that basis denies them.

32.    NanoString admits that, on its face, the 554 Patent states that it was issued on January 3, 2023, and that it lists the named inventors as Evan R. Daugharthy, Richard C. Terry,

Je-Hyuk Lee, George M. Church, and Benjamin W. Pruitt. Except as so admitted, NanoString denies any remaining allegations of paragraph 32.

33. NanoString lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 33 and on that basis denies them.

34. NanoString admits that it has been aware of the 639 and 737 Patents since February 28, 2022, when 10x and Harvard filed their Complaint. NanoString admits that it has been aware of the 051, 052, and 054 Patents since May 12, 2022, when 10x and Harvard filed their First Amended Complaint. NanoString admits that it has been aware of the 554 Patent since February 2, 2023, when 10x stated its intent to add a claim of infringement of the 554 Patent to the 22-cv-261 litigation. Paragraph 34 otherwise states legal conclusions to which no response is required. To the extent that a response is required, NanoString denies the remaining allegations in this paragraph.

35. NanoString admits that it presented studies regarding the CosMx Spatial Molecular Imager at AGBT in July 2022. NanoString further admits it announced the first commercial shipment of the CosMx Spatial Molecular Imager in December 2022. Except as so admitted, NanoString denies any remaining allegations of paragraph 35.

## COUNT I

36. NanoString incorporates and restates by reference its responses to paragraphs 1-35 of the SAC as though fully set forth herein.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41.    Denied.

42.    Denied.

43.    Denied.

## **COUNT II**

44.    NanoString incorporates and restates by reference its responses to paragraphs 1-43 of the SAC as though fully set forth herein.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Denied.

49.    Denied.

50.    Denied.

51.    Denied.

## **COUNT III**

52.    NanoString incorporates and restates by reference its responses to paragraphs 1-51 of the SAC as though fully set forth herein.

53.    Denied.

54.    Denied.

55.    Denied.

56.    Denied.

57.    Denied.

58.    Denied.

59.    Denied.

## COUNT IV

60.     NanoString incorporates and restates by reference its responses to paragraphs 1-59 of the SAC as though fully set forth herein.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

## COUNT V

68.     NanoString incorporates and restates by reference its responses to paragraphs 1-67 of the SAC as though fully set forth herein.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

## COUNT VI

76.     NanoString incorporates and restates by reference its responses to paragraphs 1-75 of the SAC as though fully set forth herein.

77.     Paragraph 77 of the SAC further includes allegations that purport to characterize NanoString's products in a manner that is vague, ambiguous, and incomplete, and on that basis NanoString denies the remaining allegations of paragraph 77.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

## PRAYER FOR RELIEF

NanoString denies that 10x and Harvard are entitled to any relief whatsoever, including the relief stated in paragraphs A through G, from either NanoString or the Court.  10x and Harvard' prayer for relief should be denied in its entirety.

## AFFIRMATIVE DEFENSES

NanoString hereby sets forth defenses to the SAC in order to place 10x and Harvard on notice regarding applicable defenses.  By listing any matter as a defense herein, NanoString does not assume the burden of proving any matter upon which 10x and Harvard, or any other party, bears the burden of proof under applicable law.

## FIRST DEFENSE – NON-INFRINGEMENT

NanoString has not infringed, and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the Asserted Patents, either literally or under the doctrine of equivalents.

## SECOND DEFENSE – INVALIDITY

The asserted claims of the Asserted Patents are invalid for failing to comply with one or more of the requirements for patentability under, including, but not limited to 35 U.S.C. §§ 101, 102, 103, 112 et seq., and the rules, regulations, and laws pertaining to those provisions, including the applicable provisions of Title 37 of the Code of Federal Regulations.

## THIRD DEFENSE – 35 U.S.C. § 287

10x and Harvard' patent infringement claims and Prayer for Relief are limited by 35 U.S.C. § 287.

## FOURTH DEFENSE – ADEQUATE REMEDY AT LAW

10x and Harvard have an adequate remedy at law and the alleged injury to 10x and Harvard is not immediate or irreparable. Accordingly, 10x and Harvard are not entitled to injunctive relief even if it were able to establish liability.

## FIFTH DEFENSE – NO EXCEPTIONAL CASE

NanoString has not engaged in any conduct that would make this an exceptional case or that would entitle 10x and Harvard to an award of attorneys' fees.

## SIXTH DEFENSE – FAILURE TO STATE A CLAIM

10x and Harvard' SAC fails to state a claim upon which relief may be granted.

## NANOSTRING'S COUNTERCLAIMS AGAINST 10X AND HARVARD

In support of its counterclaims against 10x and Harvard, NanoString alleges as follows:

### NATURE OF THE ACTION

1.      In response to 10x and Harvard' allegations in the SAC, NanoString seeks a declaratory judgment that it has not infringed the Asserted Patents, and that the Asserted Patents are invalid.

### THE PARTIES

2.      10x is a Delaware corporation with its principal place of business at 6230 Stoneridge Mall Road, Pleasanton, CA 94588.

3.      Harvard is a Massachusetts educational institution according to its allegations in the SAC.

4.      NanoString is a Delaware corporation with its principal place of business at 530 Fairview Ave. N, Seattle, WA 98109.

### JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over NanoString's declaratory judgment counterclaims pursuant to 28 U.S.C. §§ 2201 & 2202.

6.      The Court has personal jurisdiction over 10x and Harvard because 10x is a Delaware corporation and both 10x and Harvard have consented to jurisdiction in this District by filing their SAC in this action.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) because 10x is a Delaware corporation and both 10x and Harvard have consented to this venue by filing their original Complaint in this action.

## FIRST COUNT

### (Declaration of Non-Infringement of United States Patent No. 10,227,639)

8.      NanoString incorporates by references and restates the preceding Paragraphs 1-7 of its Counterclaims as though fully set forth herein.

9.      10x and Harvard have brought an action asserting the 639 Patent against NanoString.

10.      Harvard has alleged that it is the legal owner by assignment of the 639 Patent.

11.      10x has alleged that it is the exclusive licensee of the 639 Patent.

12.      10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 639 Patent.

13.      An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 639 Patent.

14.      NanoString's products are not infringing directly or in any other manner any valid and enforceable claim of the 639 Patent.

15.      For example, as described therein, when properly construed, the 639 Patent claims require analytes to be immobilized in the sample for analyte identification.  In contrast, NanoString's CosMx SMI does not immobilize analytes for analyte identification.

16.      Also, as described therein, when properly construed, the 639 Patent claims require pre-determined subsequences to form an identifier of analyte.  In contrast, to the extent they are used in CosMx SMI, pre-determined subsequences are not identifiers, but intermediate sequences for hybridization of probes.

17.     Furthermore, as described therein, when properly construed, the 639 Patent claims require a first decoder probe to be removed before the hybridization of the second decoder probe. In contrast, CosMx SMI do not remove any such decoder probes during hybridization.

18.     Moreover, as described therein, when properly construed, the 639 Patent claims require identification of a probe for analyte identification. In contrast, NanoString's CosMx SMI does not identify a probe to identify an analyte.

19.     Besides, as described therein, when properly construed, the 639 Patent claims require the use of two detectable labels for analyte identification. To the extent any accused products do not use two detectable labels for analyte identification, they do not infringe the 639 Patent.

20.     By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 639 Patent.

21.     A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## SECOND COUNT

### (Declaration of Non-Infringement of United States Patent No. 11,021,737)

22.     NanoString incorporates by references and restates the preceding Paragraphs 1-21 of its Counterclaims as though fully set forth herein.

23.     10x and Harvard have brought an action asserting the 737 Patent against NanoString.

24.     Harvard has alleged that it is the legal owner by assignment of the 737 Patent.

25.     10x has alleged that it is the exclusive licensee of the 737 Patent.

26.     10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 737 Patent.

27. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 737 Patent.

28. NanoString's products are not infringing directly or in any other manner any valid and enforceable claim of the 737 Patent.

29. For example, as described therein, when properly construed, the 737 Patent claims require the analytes to be in the cell or tissue sample during analyte identification. In contrast, NanoString's CosMx SMI does not identify analytes in the cell or tissue sample.

30. Furthermore, as described therein, when properly construed, the 737 Patent claims require signal signatures to be associated with one or more pre-determined subsequences. In contrast, to the extent they are used in CosMx SMI, signal signatures are not associated with pre-determined subsequences, but with the hybridized decoder probes.

31. Moreover, as described therein, when properly construed, the 737 Patent claims require first decoder probe to be removed before the hybridization of the second decoder probe. In contrast, CosMx SMI does not remove the decoder probes during serial hybridization.

32. Besides, as described therein, when properly construed, the 737 Patent require a temporal order of signal signatures for analyte identification. In contrast, CosMx SMI does not use a temporal order of signal signatures for analyte identification.

33. By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 737 Patent.

34. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## **THIRD COUNT**

### **(Declaration of Non-Infringement of United States Patent No. 11,293,051)**

35.     NanoString incorporates by references and restates the preceding Paragraphs 1-34 of its Counterclaims as though fully set forth herein.

36.     10x and Harvard have brought an action asserting the 051 Patent against NanoString.

37.     Harvard has alleged that it is the legal owner by assignment of the 051 Patent.

38.     10x has alleged that it is the exclusive licensee of the 051 Patent.

39.     10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 051 Patent.

40.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 051 Patent.

41.     NanoString's products are not infringing directly or in any other manner any valid and enforceable claim of the 051 Patent.

42.     For example, as described therein, when properly construed, the 051 Patent claims require the analytes to be in the cell or tissue sample for analyte identification.  In contrast, NanoString's CosMx SMI does not identify analytes in the cell or tissue sample.

43.     Also, as described therein, when properly construed, the 051 Patent claims require a temporal order of signal signatures to correspond to a location in a cell or tissue sample. In contrast, NanoString's CosMx SMI does not use a temporal order of signal signatures corresponding to a location.

44.     Furthermore, as described therein, when properly construed, the 051 Patent claims require first plurality of signal signatures to be removed from the cell or tissue sample before the

15

second readout cycle. In contrast, CosMx SMI does not remove a first plurality of signal signatures from the cell or tissue sample, but from the bound probes.

45. Moreover, as described therein, when properly construed, the 051 Patent claims require the first subset of detection reagents associated with the first set of decoding reagents and the second set of detection reagents associated with the second set of decoding reagents to overlap. To the extent any of the accused products do not let the first subset of detection reagents and the second subset of detection reagents to overlap, they do not infringe the 051 Patent.

46. By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 051 Patent.

47. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## FOURTH COUNT

### (Declaration of Non-Infringement of United States Patent No. 11,293,052)

48. NanoString incorporates by references and restates the preceding Paragraphs 1-47 of its Counterclaims as though fully set forth herein.

49. 10x and Harvard have brought an action asserting the 052 Patent against NanoString.

50. Harvard has alleged that it is the legal owner by assignment of the 052 Patent.

51. 10x has alleged that it is the exclusive licensee of the 052 Patent.

52. 10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 052 Patent.

53. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 052 Patent.

54. NanoString's products are not infringing directly or in any other manner any valid and enforceable claim of the 052 Patent.

55. For example, as described therein, when properly construed, the 052 Patent claims require the analyte to be at a location in a biological sample during identification. In contrast, NanoString's CosMx SMI does not identify the analyte at the location in a biological sample.

56. Furthermore, as described therein, when properly construed, the 052 Patent claims require the first optical signal to be removed from the location in the biological sample before the second readout cycle. In contrast, CosMx SMI does not remove the first optical signal from the sample, but from the bound probes.

57. Moreover, as described therein, when properly construed, the 052 Patent claims require the detection of multiple signal signatures and the absence thereof during analyte identification. To the extent any of the accused products do not detect multiple signal signatures for analyte detection, they do not infringe the 052 Patent.

58. By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 052 Patent.

59. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## FIFTH COUNT

### (Declaration of Non-Infringement of United States Patent No. 11,293,054)

60. NanoString incorporates by references and restates the preceding Paragraphs 1-59 of its Counterclaims as though fully set forth herein.

61. 10x and Harvard have brought an action asserting the 054 Patent against NanoString.

62. Harvard has alleged that it is the legal owner by assignment of the 054 Patent.

63.     10x has alleged that it is the exclusive licensee of the 054 Patent.

64.     10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 054 Patent.

65.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 054 Patent.

66.     NanoString's products are not infringing directly or in any other manner any valid and enforceable claim of the 054 Patent.

67.     For example, as described therein, when properly construed, the 054 Patent claims require generation of signal signatures in a cell or tissue sample.  In contrast, NanoString's CosMx SMI does not generate a signal signatures in a cell or tissue sample.

68.     Furthermore, as described therein, when properly construed, the 054 Patent claims require a nucleic acid label coupled to a probe to permit the said probe to bind to an analyte. In contrast, to the extent it is used in NanoString's CosMx SMI, a nucleic acid label does not permit the probe to bind to an analyte.  Rather, the probe is itself designed to target an analyte.

69.     Moreover, as described therein, when properly construed, the 054 Patent claims require first decoder probe to be removed before the hybridization of the second decoder probe. In contrast, CosMx SMI do not remove the decoder probes during serial hybridization.

70.     By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 054 Patent.

71.     A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## SIXTH COUNT

### (Declaration of Non-Infringement of United States Patent No. 11,542,554)

72.     NanoString incorporates by references and restates the preceding Paragraphs 1-71 of its Counterclaims as though fully set forth herein.

73.     10x and Harvard have brought an action asserting the 554 Patent against NanoString.

74.     Harvard has alleged that it is the legal owner by assignment of the 554 Patent.

75.     10x has alleged that it is the exclusive licensee of the 554 Patent.

76.     10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 554 Patent.

77.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 554 Patent.

78.     NanoString's products are not infringing directly or in any other manner any valid and enforceable claim of the 554 Patent.

79.     For example, as described therein, when properly construed, the 554 Patent claims require light signals associated with nucleic acid molecules within a sample.  In contrast, to the extent they are used in NanoString's CosMx SMI, light signals are not associated with nucleic acid molecules within a sample.

80.     Similarly, as described therein, when properly construed, the 554 Patent claims require optically-encoded signal associated with a nucleic acid molecule within a sample.  In contrast, to the extent it is used in NanoString's CosMx SMI, the optically-encoded signal is not associated with a nucleic acid molecule within a sample.

81.     Furthermore, as described therein, when properly construed, the 554 Patent claims require a plurality of images comprise a plurality of light signals received during a plurality of readout cycles.  In contrast, to the extent they are used in NanoString's CosMx SMI, the images may not comprise light signals.

82.     By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 554 Patent.

83.     A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## SEVENTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 10,227,639)

84.     NanoString incorporates by references and restates the preceding Paragraphs 1-83 of its Counterclaims as though fully set forth herein.

85.     10x and Harvard have brought an action asserting the 639 Patent against NanoString.

86.     Harvard has alleged that it is the legal owner by assignment of the 639 Patent.

87.     10x has alleged that it is the exclusive license of the 639 Patent.

88.     10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 639 Patent.

89.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 639 Patent.

90.     The claims of the 639 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more

of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and/or the rules, regulations and law pertaining thereto.

91.     For example, the asserted claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of U.S. Patent No. 10,961,566 ("Chee"), alone or in combination with additional prior art, including U.S. Patent App. Pub. No. 2005/0064435 ("Su"), Göransson et al., A single molecule array for digital targeted molecular analyses, 37 Nucleic Acids Research e7 (2008) ("Göransson"), or U.S. Patent No. 8,741,566 ("Winther"), which disclose and/or render obvious all elements of the claims of the Asserted Patents.

92.     All claims of the Asserted Patents are further invalid for failure to satisfy the requirements of 35 U.S.C. § 112. For example, the claim term "temporal order", read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art of the boundaries of protected subject matter, and therefore does not meet the definiteness standard.

93.     Moreover, the specifications of the Asserted Patents fail to contain a written description of the claims or sufficient information to enable a person of ordinary skill in the art to practice the full scope of the claims. For example, there is a lack of an adequate written description and a lack of enablement for signal detection in the cell or tissue sample.

94.     By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 639 Patent.

95.     A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## EIGHTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 11,021,737)

96.     NanoString incorporates by references and restates the preceding Paragraphs 1-95 of its Counterclaims as though fully set forth herein.

97.     10x and Harvard have brought an action asserting the 737 Patent against NanoString.

98.     Harvard has alleged that it is the legal owner by assignment of the 737 Patent.

99.     10x has alleged that it is the exclusive license of the 737 Patent.

100.    10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 737 Patent.

101.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 737 Patent.

102.    The claims of the 737 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and/or the rules, regulations and law pertaining thereto.

103.    For example, the asserted claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of U.S. Patent No. 10,961,566 ("Chee"), alone or in combination with additional prior art, including U.S. Patent App. Pub. No. 2005/0064435 ("Su"), Göransson et al., A single molecule array for digital targeted molecular analyses, 37 Nucleic Acids Research e7 (2008) ("Göransson"), or U.S. Patent No. 8,741,566 ("Winther"), which disclose and/or render obvious all elements of the claims of the Asserted Patents.

104.    All claims of the Asserted Patents are further invalid for failure to satisfy the requirements of 35 U.S.C. § 112.  For example, the claim term "temporal order", read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art of the boundaries of protected subject matter, and therefore does not meet the definiteness standard.

105.    Moreover, the specifications of the Asserted Patents fail to contain a written description of the claims or sufficient information to enable a person of ordinary skill in the art to practice the full scope of the claims.  For example, there is a lack of an adequate written description and a lack of enablement for generating a three dimensional matrix of nucleic acids in situ in a cell or tissue sample and amplifying, detecting, and sequencing such nucleic acids within the matrix; there is also a lack of an adequate written description and a lack of enablement for analyte detection while allowing spatial movement of an analyte in a sample.

106.    By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 737 Patent.

107.    A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

### NINTH COUNT

**(Declaration of Invalidity of U.S. Patent No. 11,293,051)**

108.    NanoString incorporates by reference and restates the preceding Paragraphs 1-107 of its Counterclaims as though fully set forth herein.

109.    10x and Harvard have brought an action asserting the 051 Patent against NanoString.

110.    Harvard has alleged that it is the legal owner by assignment of the 051 Patent.

111.    10x has alleged that it is the exclusive license of the 051 Patent.

112.    10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 051 Patent.

113.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 051 Patent.

114.    The claims of the 051 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and/or the rules, regulations and law pertaining thereto.

115.    For example, the asserted claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of U.S. Patent No. 10,961,566 ("Chee"), alone or in combination with additional prior art, including U.S. Patent App. Pub. No. 2005/0064435 ("Su"), Göransson et al., A single molecule array for digital targeted molecular analyses, 37 Nucleic Acids Research e7 (2008) ("Göransson"), or U.S. Patent No. 8,741,566 ("Winther"), which disclose and/or render obvious all elements of the claims of the Asserted Patents.

116.    Moreover, the specifications of the Asserted Patents fail to contain a written description of the claims or sufficient information to enable a person of ordinary skill in the art to practice the full scope of the claims.  For example, there is a lack of an adequate written description and a lack of enablement for generating a three dimensional matrix of nucleic acids in situ in a cell or tissue sample and amplifying, detecting, and sequencing such nucleic acids within the matrix; there is also a lack of an adequate written description and a lack of enablement for analyte detection while allowing spatial movement of an analyte in a sample.

117. By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 051 Patent.

118. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## TENTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 11,293,052)

119. NanoString incorporates by references and restates the preceding Paragraphs 1-118 of its Counterclaims as though fully set forth herein.

120. 10x and Harvard have brought an action asserting the 052 Patent against NanoString.

121. Harvard has alleged that it is the legal owner by assignment of the 052 Patent.

122. 10x has alleged that it is the exclusive licensee of the 052 Patent.

123. 10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 052 Patent.

124. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 052 Patent.

125. The claims of the 052 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and/or the rules, regulations and law pertaining thereto.

126. For example, the asserted claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of U.S. Patent No. 10,961,566 ("Chee"), alone or in combination with additional prior art, including U.S. Patent App. Pub. No. 2005/0064435 ("Su"), Göransson et

al., A single molecule array for digital targeted molecular analyses, 37 Nucleic Acids Research e7 (2008) ("Göransson"), or U.S. Patent No. 8,741,566 ("Winther"), which disclose and/or render obvious all elements of the claims of the Asserted Patents.

127.    All claims of the Asserted Patents are further invalid for failure to satisfy the requirements of 35 U.S.C. § 112.  For example, the claim terms "signal signature" and "temporal order", read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art of the boundaries of protected subject matter, and therefore does not meet the definiteness standard.

128.    Moreover, the specifications of the Asserted Patents fail to contain a written description of the claims or sufficient information to enable a person of ordinary skill in the art to practice the full scope of the claims.  For example, there is a lack of an adequate written description and a lack of enablement for analyte identification at a location in a biological sample.

129.    By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 052 Patent.

130.    A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## ELEVENTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 11,293,054)

131.    NanoString incorporates by references and restates the preceding Paragraphs 1-130 of its Counterclaims as though fully set forth herein.

132.    10x and Harvard have brought an action asserting the 054 Patent against NanoString.

133.    Harvard has alleged that it is the legal owner by assignment of the 054 Patent.

134.    10x has alleged that it is the exclusive licensee of the 054 Patent.

135.    10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 054 Patent.

136.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 054 Patent.

137.    The claims of the 054 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and/or the rules, regulations and law pertaining thereto.

138.    For example, the asserted claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of U.S. Patent No. 10,961,566 ("Chee"), alone or in combination with additional prior art, including U.S. Patent App. Pub. No. 2005/0064435 ("Su"), Göransson et al., A single molecule array for digital targeted molecular analyses, 37 Nucleic Acids Research e7 (2008) ("Göransson"), or U.S. Patent No. 8,741,566 ("Winther"), which disclose and/or render obvious all elements of the claims of the Asserted Patents.

139.    All claims of the Asserted Patents are further invalid for failure to satisfy the requirements of 35 U.S.C. § 112.  For example, the claim term "temporal order", read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art of the boundaries of protected subject matter, and therefore does not meet the definiteness standard.

140.    Moreover, the specifications of the Asserted Patents fail to contain a written description of the claims or sufficient information to enable a person of ordinary skill in the art to

practice the full scope of the claims. For example, there is a lack of an adequate written description and a lack of enablement for signal detection in the cell or tissue sample.

141. By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 054 Patent.

142. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## TWELFTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 11,542,554)

143. NanoString incorporates by references and restates the preceding Paragraphs 1-142 of its Counterclaims as though fully set forth herein.

144. 10x and Harvard have brought an action asserting the 554 Patent against NanoString.

145. Harvard has alleged that it is the legal owner by assignment of the 554 Patent.

146. 10x has alleged that it is the exclusive licensee of the 554 Patent.

147. 10x and Harvard have alleged and continue to allege that NanoString has infringed and continues to infringe one or more claims of the 554 Patent.

148. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between 10x and Harvard and NanoString concerning whether NanoString has infringed and is infringing any valid and enforceable claim of the 554 Patent.

149. The claims of the 554 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and/or the rules, regulations and law pertaining thereto.

150.    For example, the asserted claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of Lee, Je Hyuk, et al. "Highly multiplexed subcellular RNA sequencing in situ." science 343.6177 (2014): 1360-1363 ("Lee"), alone or in combination with additional prior art, including Lubeck, Eric, et al. "Single-cell in situ RNA profiling by sequential hybridization." Nature methods 11.4 (2014): 360-361 ("Lubeck"), U.S. Pat. Pub. No. 2012/0046203, Walsh et al., February 23, 2012 ("Walsh"), or Heinzman, Jamie M., Shara D. Rice, and L. A. Corkan. "Robotic liquid handlers and semiautomated cell quantification systems increase consistency and reproducibility in high-throughput, cell-based assay." JALA: Journal of the Association for Laboratory Automation 15.1 (2010): 7-14 ("Heinzman"), which disclose and/or render obvious all elements of the claims of the Asserted Patents.

151.    All claims of the Asserted Patents are further invalid for failure to satisfy the requirements of 35 U.S.C. § 112. For example, the claim terms "optically-encoded signals" and "nucleic acid molecules within said volume", read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art of the boundaries of protected subject matter, and therefore does not meet the definiteness standard.

152.    As another example, the claim language "a computing system comprising at least one computer readable storage medium having program instructions stored thereon, which program instructions are executable by at least one processor of said computing system to cause said at least one processor to perform a method comprising" is directed to both an apparatus and a method of using the apparatus, and when read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art of the boundaries of protected subject matter, and therefore does not meet the definiteness standard.

153.    Moreover, the specifications of the Asserted Patents fail to contain a written description of the claims or sufficient information to enable a person of ordinary skill in the art to practice the full scope of the claims.  For example, there is a lack of an adequate written description and a lack of enablement for determination of three-dimensional positional information of nucleic acid molecules within sample.

154.    By virtue of the foregoing, NanoString desires a judicial determination of its rights and duties with respect to any alleged infringement of the 554 Patent.

155.    A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## **REQUEST FOR RELIEF**

WHEREFORE, having fully answered 10x and Harvard' SAC and having asserted Affirmative Defenses, and Counterclaims, NanoString respectfully requests the following relief:

A.    That this Court enter judgment on 10x and Harvard' SAC and NanoString's Counterclaims in favor of NanoString, against 10x and Harvard, with 10x and Harvard being awarded no relief of any kind in this action;

B.    That this Court enter judgment and/or declarations that NanoString does not infringe the Asserted Patents and that the Asserted Patents are invalid;

C.    That this Court enter a judgment declaring this case exceptional under 35 U.S.C. § 285 and awarding NanoString its attorneys' fees and prejudgment and post-judgment interest;

D.    That this Court award NanoString all of its costs of this action; and

E.    That this Court grant such other and further relief as the Court shall deem just and proper.

Dated: March 22, 2023

Respectfully submitted,

FARNAN LLP

By: */s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Phone: (650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

Christopher Pepe (admitted *pro hac vice*)
Amanda Branch (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600,
Washington, DC 20036
Phone: (202) 682-7000
christopher.pepe@weil.com
amanda.branch@weil.com

Natalie C. Kennedy (admitted *pro hac vice*)
Yi Zhang (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Phone: (212) 310 8145
natalie.kennedy@weil.com
yi.zhang@weil.com

*Attorneys for Defendant*
*Nanostring Technologies, Inc.*

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-261 (MFK) |
| NANOSTRING TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) ) | |

**10X GENOMICS, INC.'S AND PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S ANSWER AND DEFENSES TO NANOSTRING TECHNOLOGIES, INC.'S COUNTERCLAIMS TO 10X AND HARVARD' SECOND AMENDED COMPLAINT**

Plaintiffs 10x Genomics, Inc. ("10x") and President and Fellows of Harvard College ("Harvard") (together, "Plaintiffs") hereby answer the allegations in Defendant NanoString Technologies, Inc.'s Amended Counterclaims ("Counterclaims") against Plaintiffs (D.I. 99). Unless expressly admitted, Plaintiffs deny each and every allegation in Defendant's Counterclaims. To the extent that any non-numbered statements in the Counterclaims contain allegations, Plaintiffs deny each and every such allegation.

## NATURE OF THE ACTION

1.     Plaintiffs admit that Defendant's Counterclaims purport to seek declaratory judgment that it has not infringed United States Patent Nos. 11,227,639 ("639 Patent"); 11,021,737 ("737 Patent"); 11,293,051 ("051 Patent"); 11,293,052 ("052 Patent"), 11,293,054 ("054 Patent"), and 11,542,554 ("554 Patent") (collectively, the "Asserted Patents") and that the Asserted Patents are invalid, arising under the Patent Laws of the United States, 35 U.S.C. § 271 *et seq*. Plaintiffs deny that the allegations have any merit. Except as so admitted, Plaintiffs deny any remaining allegations of this paragraph.

## **THE PARTIES**

2.      Admitted.

3.      Admitted.

4.      Admitted.

## **JURISDICATION AND VENUE**

5.      This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that the Court has subject matter jurisdiction over NanoString's counterclaims pursuant to 28 U.S.C. §§ 2201 and 2202. Except as so admitted, Plaintiffs deny any remaining allegations of this paragraph.

6.      This paragraph states legal conclusions to which no response is required. To the extent that a response is required, 10x admits that it is a Delaware corporation. Plaintiffs admit that they filed their Second Amended Complaint in this action, and that the Court has personal jurisdiction over Plaintiffs for purposes of this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

7.      This paragraph states legal conclusions to which no response is required. To the extent that a response is required, 10x admits that it is a Delaware corporation. Plaintiffs admit that they filed their original Complaint in this action, and that venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) for purposes of this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

## **FIRST COUNT**
## **(Declaration of Non-Infringement of United States Patent No. 10,227,639)**

8.      Plaintiffs incorporate and restate by reference their responses to paragraphs 1-7 of Defendant's Counterclaims as though fully set forth herein.

9.      Admitted.

10.     Admitted

11.     Admitted.

12.     Admitted.

13.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 639 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

14.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied. *See* Plaintiffs' Second Amended Complaint and attachments/exhibits thereto. D.I. 92.

15.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

16.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

17.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

18.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

19.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

20.     Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 639 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

21.     Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

## **SECOND COUNT**
### **(Declaration of Non-Infringement of United States Patent No. 11,021,737)**

22.     Plaintiffs incorporate and restate by reference their responses to paragraphs 1-21 of Defendant's Counterclaims as though fully set forth herein.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning

of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 737 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

28.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied. *See* Plaintiffs' Second Amended Complaint and attachments/exhibits thereto. D.I. 92.

29.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

30.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

31.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

32.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

33.     Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 737 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

34.    Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

**<u>THIRD COUNT</u>**
**(Declaration of Non-Infringement of United States Patent No. 11,293,051)**

35.    Plaintiffs incorporate and restate by reference their responses to paragraphs 1-34 of Defendant's Counterclaims as though fully set forth herein.

36.    Admitted.

37.    Admitted.

38.    Admitted.

39.    Admitted.

40.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 051 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

41.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied. *See* Plaintiffs' Second Amended Complaint and attachments/exhibits thereto. D.I. 92.

42. The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

43. The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

44. The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

45. The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

46. Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 051 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

47. Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

### FOURTH COUNT
### (Declaration of Non-Infringement of United States Patent No. 11,293,052)

48. Plaintiffs incorporate and restate by reference their responses to paragraphs 1-47 of Defendant's Counterclaims as though fully set forth herein.

49.     Admitted.

50.     Admitted.

51.     Admitted.

52.     Admitted.

53.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 052 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

54.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied. *See* Plaintiffs' Second Amended Complaint and attachments/exhibits thereto. D.I. 92.

55.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

56.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

57.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

58.     Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 052 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

59.     Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

### FIFTH COUNT
### (Declaration of Non-Infringement of United States Patent No. 11,293,054)

60.     Plaintiffs incorporate and restate by reference their responses to paragraphs 1-59 of Defendant's Counterclaims as though fully set forth herein.

61.     Admitted.

62.     Admitted.

63.     Admitted.

64.     Admitted.

65.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 054 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

66.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied. *See* Plaintiffs' Second Amended Complaint and attachments/exhibits thereto. D.I. 92.

67.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

68.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

69.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

70.     Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 054 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

71.     Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

## SIXTH COUNT
### (Declaration of Non-Infringement of United States Patent No. 11,542,554)

72.     Plaintiffs incorporate and restate by reference their responses to paragraphs 1-71 of Defendant's Counterclaims as though fully set forth herein.

73.     Admitted.

74.     Admitted.

75.     Admitted.

76.     Admitted.

77.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 554 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

78.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied. *See* Plaintiffs' Second Amended Complaint and attachments/exhibits thereto. D.I. 92.

79.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

80.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

81.     The allegations of this paragraph are conclusions of law and characterizations of fact to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations of this paragraph.

82.     Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 554 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

83.     Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

<u>**SEVENTH COUNT**</u>
**(Declaration of Invalidity of U.S. Patent No. 10,227,639)**

84.     Plaintiffs incorporate and restate by reference their responses to paragraphs 1-83 of Defendant's Counterclaims as though fully set forth herein.

85.     Admitted.

86.     Admitted.

87.     Admitted.

88.     Admitted.

89.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 639 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

90.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

91.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

92.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

93.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

94.     Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 639 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

95.     Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

## EIGHTH COUNT
### (Declaration of Invalidity of U.S. Patent No. 11,021,737)

96.     Plaintiffs incorporate and restate by reference their responses to paragraphs 1-95 of Defendant's Counterclaims as though fully set forth herein.

97.     Admitted.

98.     Admitted.

99.     Admitted.

100.    Admitted.

101.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning

of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 737 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

102.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

103.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

104.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

105.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

106.    Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 737 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

107.    Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

## NINTH COUNT
### (Declaration of Invalidity of U.S. Patent No. 11,293,051)

108.    Plaintiffs incorporate and restate by reference their responses to paragraphs 1-107 of Defendant's Counterclaims as though fully set forth herein.

109.    Admitted.

110.    Admitted.

111.    Admitted.

112.    Admitted.

113.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 051 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

114.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

115.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

116.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

117.    Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 051 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

118.    Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural

schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

## TENTH COUNT
### (Declaration of Invalidity of U.S. Patent No. 11,293,052)

119.    Plaintiffs incorporate and restate by reference their responses to paragraphs 1-118 of Defendant's Counterclaims as though fully set forth herein.

120.    Admitted.

121.    Admitted.

122.    Admitted.

123.    Admitted.

124.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 052 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

125.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

126.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

127.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

128.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

129.     Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 052 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

130.     Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

**ELEVENTH COUNT**
**(Declaration of Invalidity of U.S. Patent No. 11,293,054)**

131.     Plaintiffs incorporate and restate by reference their responses to paragraphs 1-130 of Defendant's Counterclaims as though fully set forth herein.

132.     Admitted.

133.     Admitted.

134.     Admitted.

135.     Admitted.

136.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 054 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

137.     This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

138.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

139.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

140.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

141.    Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 054 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

142.    Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

## TWELFTH COUNT
### (Declaration of Invalidity of U.S. Patent No. 11,542,554)

143.    Plaintiffs incorporate and restate by reference their responses to paragraphs 1-142 of Defendant's Counterclaims as though fully set forth herein.

144.    Admitted.

145.    Admitted.

146.    Admitted.

147.    Admitted.

148.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, Plaintiffs admit that an actual controversy within the meaning

of 28 U.S.C. §§ 2201 and 2202 has arisen and exists between Plaintiffs and Defendant regarding Defendant's infringement of the valid and enforceable claims of the 554 Patent but deny that Defendant's allegations have any merit. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

149.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

150.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

151.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

152.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

153.    This paragraph states legal conclusions to which no response is required. To the extent that a response is required, the allegations in this paragraph are denied.

154.    Plaintiffs admit that Defendant seeks a judicial determination of its rights and duties with respect to Plaintiffs' allegations of Defendant's infringement of the 554 Patent. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

155.    Plaintiffs admit that a determination by this Court as to Plaintiffs' allegations in the Second Amended Complaint and the remedies requested therein, including a determination as to Defendant's defenses and counterclaims, is appropriate and timely according to the procedural schedule set by the Court in this action. Except as so admitted, Plaintiffs deny the remaining allegations of this paragraph.

**REQUEST FOR RELIEF**

Plaintiffs deny that Defendant is entitled to any relief whatsoever, including the relief requested in paragraphs A-E of NanoString's Request for Relief.

Wherefore, in addition to the relief requested by Plaintiffs in their Second Amended Complaint, Plaintiffs pray that the Court enter a judgment as follows:

A.      That NanoString's Counterclaims be dismissed with prejudice and NanoString take nothing;

B.      That 10x and Harvard be awarded such other and further relief as the Court may deem appropriate;

C.      Judgement in favor of 10x and Harvard against NanoString's First through Twelfth Counterclaims;

D.      That NanoString be required to pay 10x's attorneys' fees and costs;

E.      A declaration that the case is an exceptional case and that NanoString be required to pay Plaintiffs' attorneys' fees pursuant to 35 U.S.C. § 285;

F.      A judgment awarding 10x such other and further relief as the Court may deem just, reasonable, and proper.

10x and Harvard reserve the right to amend their Answer and Counterclaims to raise additional defenses and counterclaims as warranted by subsequent investigation and/or analysis or if NanoString is granted leave to amend its counterclaims.

**REQUEST FOR RELIEF**

Plaintiffs acknowledge NanoString's request for a jury trial on its counterclaims and, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs also demand a jury trial on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Cameron P. Clark*

_____

Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff 10x Genomics, Inc.*

OF COUNSEL:

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA  94065
(650) 802-6000

Samantha Jameson
Ronald J. Pabis
Kiley White
TENSEGRITY LAW GROUP LLP
8260 Greensboro Drive, Suite 260
McLean, VA  22102-3848
(650) 802-6000

April 12, 2023

MORRIS JAMES LLP

*/s/ Kenneth L. Dorsney*

_____

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff President and Fellows of Harvard College*

OF COUNSEL:

Geoffrey M. Raux
Ruben J. Rodrigues
Michael J. Tuteur
Sarah E. Rieger
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA  02199
(617) 502-3284

Sarah E. Rieger
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI  53202
(414) 319-7101

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 12, 2023, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                  *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Edward R. Reines, Esquire                              *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Amanda Branch, Esquire                                 *VIA ELECTRONIC MAIL*
Christopher M. Pepe, Esquire
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Natalie C. Kennedy, Esquire                           *VIA ELECTRONIC MAIL*
Yi Zhang, Esquire
767 Fifth Avenue
New York, NY  10153-0019
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

*/s/ Cameron P. Clark*

Cameron P. Clark (#6647)